1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANGALA KARTAN,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. 1:15-cv-1273-GSA<br><br>ORDER AFFIRMING AGENCY'S DENIAL<br>OF BENEFITS AND ORDERING<br>JUDGMENT FOR COMMISSIONER |

## I.    **INTRODUCTION**

Plaintiff Mangala Kartan ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Gary S. Austin.[1] Upon a review of the entire record, the Court finds the ALJ's decision is proper and is supported by substantial evidence in the record as a whole.  Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

///

///

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docs. 8 and  22).

1

## II.  FACTS AND PRIOR PROCEEDINGS

2        Plaintiff worked as a desk clerk at a hotel for many years.  However, on March 12, 2012, she

3   filed an application for DIB alleging disability beginning April 2, 2001, due to blood cancer, liver

4   disease, and neck and lower back pain. AR 195-201; 218.  Plaintiff's applications were denied

5   initially and on reconsideration. AR 55-127; 137-142.  She requested a hearing before an

6   Administrative Law Judge ("ALJ"). AR 8.  ALJ Tamia Gordon held a hearing on January 23, 2014

7   (AR 11-26), and issued an order denying benefits on February 26, 2014. AR 14-22.

8        In her written decision, the ALJ focused her analysis on the time period beginning April 2001

9   through December 31, 2006..[2]  The ALJ found that during the relevant time period, Plaintiff suffered

10  from several impairments including lumbar and cervical degenerative disc disease, hypertension,

11  chronic liver disease, irritable bowel syndrome with abdominal pain, orthostatic tremors in the

12  bilateral hands and legs, Hepatitis B with hepatic cysts, and fibromyalgia.  AR 16.  However, despite

13  these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift

14  and carry twenty pounds occasionally and ten pounds frequently; that she could stand and sit for a

15  total of six hours in and eight-hour day; and that she required a sit or stand option at will. AR 17.

16  The ALJ also found that she could occasionally balance, stoop, crouch, kneel, crawl, and climb

17  ramps and stairs, but could never climb ladders, ropes, or scaffolds.[3]  AR 17.  The ALJ determined

18  that Plaintiff was not disabled because jobs existed in the national economy, including an

19  information clerk and a parking attendant, that she could perform. AR 21.  In doing so, the ALJ

20  found that Plaintiff was not credible. AR 20.

21        The Plaintiff appealed that opinion, and the ALJ's decision became the Commissioner's final

22  decision when the Appeals Council denied Plaintiff's request for review.  AR 1-6.  This appeal

23  followed.  In the appeal, Plaintiff argues that the ALJ's credibility determination is improper because

24  the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective testimony.

25  (Doc. 18, pgs. 8-18; Doc. 20. pgs. 3-6).

26

27  [2] The Plaintiff's eligibility date began in April 2001, when Plaintiff last worked, and concluded on December 31, 2006, because the ALJ determined that this was the date Plaintiff last met the insured status requirements.  AR 16.

28  [3] The ALJ also determined that Plaintiff must avoid concentrated exposure to vibration and moving machinery.  AR 17.

### A. **Plaintiff's Testimony**

The ALJ conducted a hearing which was held in Fresno, California.  AR 27.  Plaintiff appeared and testified.  AR 27-55.  She was represented by attorney Robert Ishikawa. AR  29. Vocational Expert ("VE") Stephen Schmidt also testified.  AR 48-54.  The summary of the following testimony relates to Plaintiff's symptoms during the relevant time period, which, as indicated above, is April 2001 through December 31, 2006.

Plaintiff was fifty-seven years old at the time of the hearing.  AR 31.  She completed the eleventh grade in India. AR 31.  She does not have a GED or a high school diploma. AR 31. Plaintiff last worked as a desk clerk at a hotel from 1996 until April 2001.  AR 32. She stopped working at that position because she experienced pain after having a hysterectomy in 2001, allegedly from the anesthesia. AR 33.

After the surgery, Plaintiff had continuous shaking in her legs and both of her hands (but more in her right hand), as well as pain in her neck, head, ribs and back, which traveled down both legs to her feet, and down both arms. AR 34-39.  Plaintiff saw several doctors and was diagnosed with degenerative disc disease. AR 34. She was advised that her symptoms may be caused by a pinched nerve, and that there was no cure for her condition. AR 34.

Plaintiff initially testified that her tremors would cause her to fall if she were forced to walk. However, she later indicated that dizziness caused her to fall every time she exerted herself, which was approximately two to three times a week.  AR 39-40.  Plaintiff used a cane prior to 2006, but had problems with it because of her shaking and was using a wheelchair at the time of the hearing. AR 34-35.

During the relevant time period, Plaintiff experienced constant dizziness and tremors.  AR 44.  She was in pain due to her degenerative disc disease and had to lie down more than fifty percent of the time. AR 44.   She could only lift objects weighing one or two pounds, and could only sit for twenty to thirty minutes at one time, for a total of two hours in an eight hour work day. AR 43, 45, 46. She was able to stand five to ten minutes while holding onto a table or counter, otherwise, she was unable to stand. AR 46.  As a result, she was unable to do housework, cooking, or laundry.  AR

3

43-44.  Her husband helped her go to the bathroom, and prepared her food for her. AR 35, 44.  She did not participate in social activities and was housebound.  AR 45.

Plaintiff was prescribed Vioxx, Celebrex, and Bextra to treat her symptoms. AR 33-34, 46. These medications caused pain in her stomach, as well as constipation, bloating, and vomiting. AR 42.  She subsequently tested positive for Hepatitis B after receiving a blood transfusion.  AR 40. After doctors realized she had a liver problem, her medications were discontinued and she began taking Tylenol and using ice packs and heat packs to ease her back pain.  AR 47.

In February 2007, she began taking medications to treat her liver condition, and she continued to take the medication until the date of the hearing.[4]  AR 40-41.  Her symptoms have not improved and she is still in pain.  AR 41.  At the time of the hearing, she was unable to do anything. AR 44.  In February 2007, her doctor told her that her blood levels were irregular.  Plaintiff testified that a biopsy of her bone marrow indicated leukemia. She received chemotherapy, but her condition has not gotten any better since 2006. AR 48.

## B.  Medical Record

The entire medical record was reviewed by the Court.  AR 281-795.  However, only the medical evidence that relates to the issues raised in this appeal is summarized below.

Ms. Kartan underwent an abdominal ultrasound in December 2002 due to a diagnosis of hepatitis B.  The ultrasound demonstrated mildly increased echo texture of the liver, but no focal mass lesion.  AR 18, 722. A follow-up ultrasound in January 2004, showed that the liver was slightly echogenic with fatty infiltration, but no focal hepatic masses. AR 28, 724.  In September 2004, Ms. Kartan saw Dr. Paul Martin, a gastroenterolgoist for pain in the left upper quadrant and back pain. A.R. 792. It was noted that Ms. Kartan was a Hepatitis B carrier, however ultrasound and liver functions were normal. AR 792-793.  The doctor opined that Plaintiff most likely had a trigger point and recommended that she see another doctor for a trigger point injection. AR 793.

Plaintiff saw Dr. Martin again on August 8, 2005, who noted that liver function tests were completely normal, but that her cholesterol was a little high.  AR 790.  Her liver functions in

---

[4] Plaintiff gave inconsistent testimony regarding the date she began taking medication to treat the Hepatitis B. AR 40-41. Initially, Plaintiff testified she began taking the medication in February 2007, then later stated she began the medication in February 2005. *Id.*

October 2005 were also normal.  AR 788.  An abdominal ultrasound performed in August of 2006, again revealed stable evidence of diffuse hepatic fatty infiltration, and otherwise unimpressive results. AR 535.

In February 2007, after the date of last insured, Plaintiff had a liver biopsy that showed mild chronic Hepatitis B, with periportal fibrosis, and moderate macrovascular steatosis. AR 527; 532. In March 2007, a MRI of the liver revealed two simple cysts in the dome of the liver with no acute abnormalities or evidence of malignancy. AR 748.  In April 2007, she was seen by Dr. Harper, M.D., a gastroenterologist.  AR 522-525.  He noted she had stage two fibrosis, with Hepititis B and a viral load of 317,000.  AR 523.  He recommended Plaintiff take Entecavir daily.  AR 523. However, in October 2007, Plaintiff was evaluated by Dr. Taylor, another gastroenterologist for GERD.  AR 780-784.  It was noted that Plaintiff had not been taking her medications consistently due to GI symptoms.  AR 780, 782.

In September 2008, Dr. Martin saw Plaintiff again for regurgitation and burning in the esophagus and mouth. Plaintiff reported not being able to tolerate the Entecavir. AR 776.  In April 2009, Plaintiff saw Dr. Harper, and again reported not taking the Entecavir, but her liver functioning tests were normal. AR 773.  In August 2009, an abdominal ultrasound revealed that her liver was morphologically normal, and the cyst at the dome of the liver as well as a 1.3 cm hypoechoic lesion remained unchanged.  AR 729.  Another ultrasound was completed in October 2009, and revealed the cyst on her liver remained stable, and an otherwise normal exam.  AR 486.  In November 2009, Plaintiff again reported to doctors that she was suppose to  be taking Entecavir, but she is unable to tolerate it. AR 770.  Notwithstanding the lack of the Entecavir, the surveillance studies had been "okay."  AR 770.

With regard to her back pain, Plaintiff saw Dr. Martin in November 2003. A.R. 431. A MRI of the thoracic spine revealed "a few levels demonstrating disc bulging but no central canal stenosis." A.R. 420.  There was no evidence of compression fracture, disc herniation, extrusion or free fragment. AR 420.  A MRI of the lumbar spine dated May 18, 2004 revealed: 1) mild-to-moderate central stenosis on the basis of broad-based central bulging and a congenitally small canal at the L3-4 level, more borderline at the L4-5 level; 2) annular fissuring involving the left lateral

1   aspect of the L4-5 disc with bulging laterally. No discrete herniation; 3) mild bilateral 4-5 foraminal

2   narrowing; and 4) central disc protrusion which is broad-based, extending slightly caudally,

3   associated with annular fissuring at the L2-3 level. AR 423.

4        In April 2005, Ms. Kartan presented to Dr. Martin for chronic tinnitus and dizziness, etiology

5   unknown. AR 415. In June 2005, after testing, Dr. Martin referred Ms. Kartan to neurologist

6   Michael Sullivan, M.D. AR 715. Examination showed tremor of the legs that was both visible and

7   palpable while standing.  She walked guardedly with a slight reduction of step length. AR 715. She

8   had tenderness of the neck and lumnbrosacral spine, as well as a mild tremor of the extended hand.

9   AR 715.

10        In March 2006, Dr. Sullivan performed a eletromyelogram. AR 709. The EMG demonstrated

11   active L5 radiculopathy, evidence of bilateral meraglia paresthetic, and suspicious for orthostatic

12   tremor. AR 709.  On October 3, 2006, Ms. Kartan returned to Dr. Sullivan. AR 707. Ms. Kartan

13   complained of numbness in her tongue, cheek, and shoulders, and an unpleasant pulling sensation in

14   her head. AR 707. She continued to report neck and low back pain, bilateral thigh pain, and stated

15   that she could not walk more than a minute or two. AR 707.  She also stated that she gets dizzy at

16   times. Objective examination revealed mild shakiness of the extended hands. AR 707. Dr. Sullivan

17   also reviewed multiple MRIs and the EMG. AR 707. The impression was multiple and significant

18   neurologic problems including the orthostatic tremor. AR 707. It was noted that Plaintiff's dizziness

19   had remained stable with only occasional episodes.  AR 707. Plaintiff was prescribed Clonazepam to

20   further reduce the orthostatic tremor and vertigo.  AR 707.

21        On December 20, 2006, a MRI of the cervical spine revealed mild spondylosis and equivocal

22   right C5 root compression due to slightly asymmetrically bulging C4-5 disc. AR 704. A MRI of the

23   lumbar spine revealed mild degenerative bulging at each level from L2 to S1 with no definite

24   stenosis or root displacement, and moderate facet arthrosis at L5-S1. AR 705.

25        Plaintiff was seen again by Dr. Sullivan in May 2007, and reported that she felt unsteady

26   ambulating and dizzy at times, numbness in her tongue, and that she was not able to walk very far.

27   AR 701.  Physical therapy was recommended for her neck, but the doctor noted she had been

28   reluctant to participate due to dizziness.  AR 710.

### III.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4).  The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 416.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.1520(a)(4).

### IV.     SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V.   DISCUSSION

### A.  The ALJ Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding her testimony not credible. (Doc. 18.)  Specifically, the Plaintiff contends that the ALJ improperly rejected Plaintiff's credibility by: (1) failing to properly assess the objective medical evidence; (2) erroneously relying on a sit-stand accommodation; (3) noting that Plaintiff did not receive treatment for her Hepatitis B until after the relevant disability period and did not take her medication as prescribed; and (4) improperly concluding that Plaintiff gave inconsistent statements about how frequently she fell.  Defendant contends that the ALJ's credibility determination is supported by substantial evidence.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014).  First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id*.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so.  *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

8

reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of those symptoms are not entirely credible." AR 20. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

As noted above, because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

In this case, the ALJ stated the following regarding Plaintiff's credibility:

The objective evidence shows some cervical degenerative disc disease and mild lumbar degenerative disc disease with occasional radiculopathy, but such mild results were not indicative of disabling symptoms.

The claimant had an orthostatic tremor, but it only acted up when she was standing still. It quickly stopped when she walked or sat. I have accommodated the tremor with a sit-stand option.

The claimant had a diagnosis of hepatitis B since at least 2002, but she did not receive treatment until 2007, after the date last insured. The claimant testified that she has been taking the medication since 2007, but the evidence from October 2007 shows that she stopped taking it. Her liver function remained normal.

The claimant testified that she fell two or three times a week due to dizziness.  However, there is no evidence in the record of the falls.  In fact, treatment records show only that the claimant felt like she might fall.

Therefore, because the objective medical evidence does not support disabling impairments prior to December 31, 2006, and because the inconsistencies in the record and testimony, I give little weight to the claimant's subjective complaints.

AR 20.

Plaintiff contends that the credibility assessment was improper.  Specifically, she argues that the ALJ's reasoning that the objective medical evidence was not indicative of disabling symptoms is flawed because the ALJ's RFC assessment is based on her own lay medical opinion, rather than physician's assessment of the medical evidence.  Thus, the statement that the objective findings do not support Plaintiff's complaints is made without medical expertise.  (Doc. 18, pg. 11-14).  The Commissioner has not addressed this specific argument, but contends that objective medical record supports the ALJ's conclusions.[5]

A review of the record reveals that Plaintiff is correct.  Here, the ALJ's opinion gave a comprehensive summary of the objective medical evidence.  AR 18-19.  In doing so, the ALJ identified three doctors who completed relevant medical assessments: (1) Dr. Kishwar Gill, M.D., Plaintiff's treating physician from March 7, 2012 until May 2012 (AR 665-666); (2)  Dr. Martin, M.D., another one of Plaintiff's treating physicians (AR 671-672); and (3) Dr. A. Nasrabadi, MD, a non-examining state agency doctor. AR 19; 115-120.  The ALJ gave little weight to all three opinions noting that: (1) Dr. Gill did not start treating Plaintiff until May 2012, which was five years after the relevant disability period; (2) Dr. Martin did not assess Plaintiff's functional limitations; and (3) the state agency physician found there was insufficient evidence to evaluate the claim. AR

---

[5]   The Court notes that the Commissioner has articulated several bases for the ALJ's credibility determination that are not included in the ALJ's credibility analysis including: (1) that the record contains inconsistencies about the Plaintiff's hysterectomy (Doc. 19, pgs. 6-7); (2) that the Plaintiff was only taking Tylenol and using a heating pad and ice for pain (Doc. 19, pg. 8);  and (3) that the Plaintiff did not participate in physical therapy as recommended. (Doc. 19, pg. 7). However, these reasons were not articulated by the ALJ as part of her credibility determination, and therefore the Court has not considered these arguments.  A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (We are constrained to review the reasons the ALJ asserts).

19, 117.  Because the ALJ rejected all of the opinions, the ALJ's reliance on the lack of objective

medical evidence as a basis to reject Plaintiff's credibility was improper, as the ALJ is not permitted

to substitute her own interpretation of the medical evidence for the opinion of the medical

professionals.[6] *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Boiles v. Barnhart*, 395

F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  Thus, this is not

a clear and convincing reason to reject Plaintiff's testimony.

Similarly, the ALJ's reference to imposing a sit and stand option to address Plaintiff's

orthostatic tremor is not a basis to reject her credibility, but is instead an accommodation.  AR 20.

Therefore, this is not a clear and convincing basis for an adverse credibility determination.  To the

extent that the Plaintiff argues that the ALJ did not properly assess all of Plaintiffs' tremors, the ALJ

addressed tremors in Plaintiff's legs by limiting her to light work, and incorporating a sit stand

option even though no doctor's opinion treating Plaintiff during the relevant time period expressly

identified that functional limitation for purposes of work.  AR 19 ("I find that the claimant has

limitations from her tremor and spinal degenerative disc disease.  I have accommodated her

---

[6] To the extent that Plaintiff is contending that the ALJ improperly evaluated the medical evidence and therefore the RFC is improper, she has not adequately developed this argument.  There is no reference to Dr. Gill and Dr. Martin's evaluations in Plaintiff's brief, nor is there an analysis with regard to an error in the ALJ's reasoning for rejecting any of the physicians' opinions.  *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief.  Rather, we review only issues which are argued specifically and distinctly in a party's opening brief.") (internal quotations and citations omitted).

Furthermore, even if this Court were to find error with the ALJ's analysis of the RFC, the error would be harmless.  Plaintiff has not identified any physician's opinion identifying any functional limitations during April 2001 and December 31, 2006, the relevant time period.  Plaintiff bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F. 3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512(a).  In this instance, the relevant evaluation time period was over eight years prior to the hearing.  Therefore, the ALJ was unable to order additional assessments or tests to evaluate Plaintiff's claim because the relevant time period had expired at the time of the hearing.  Since Plaintiff is unable to meet her burden by virtue of the unavailability of relevant evidence, any error is harmless because the ultimate disability determination would not, and could not have changed.  *Moline v. Astrue*, 674 F. 3d 1104, 1115 (9th 2012) (Although we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.).  (quotations and internal citations omitted).  Here, any remand of the instant case on this issue would be futile because Plaintiff has not met her burden, and the ALJ cannot go back in time to create medical evidence that was not available from 2001 through 2006.

symptoms by limiting her to work at the light exertional level.  I have also provided a sit stand option so that the claimant is able to sit or stand when she needs to relieve her leg symptoms"). Similarly, on examination, Plaintiff's hand tremor was described as a mild tremor of the extended hand. AR 715. This mild tremor is also accommodated by light work.  The medical record does not support a more restrictive limitation.

Notwithstanding the above, the other two reasons the ALJ provided are clear and convincing reasons that are supported by the record.  First, the ALJ properly noted that Plaintiff gave inconsistent testimony regarding her falls.  During the hearing, Plaintiff was questioned specifically about whether she was falling.  She indicated that she was unable to walk and she would fall two to three times a week. AR 39-40.  However, as the ALJ correctly noted, there is no medical evidence in the record that she was falling frequently, or in fact, had ever fallen as a result of her symptoms.  To the contrary, Plaintiff reported to her doctors that it felt as if she may fall, but she did not do so.  AR 406 (Plaintiff indicating that she feels as if she is *going to fall*); AR 707 (Plaintiff reporting she can't walk for more than a minute or two, if she does, her legs become shaky and she feels that they will give way beneath her – no mention of falling); AR 686 (Plaintiff experiencing increasing dizziness feels like she will fall but does not); AR 692 (experiencing episodes of dizziness noting that she does not fall, but almost); AR 701 (Plaintiff feeling unsteady ambulating and dizzy at times and unable to walk far – no mention of falling).  The ALJ was entitled to consider these inconsistencies in making a credibility determination. *Tommasetti v. Astrue*, 533 F. 3d at 1039 (9th Cir. 2008) (An ALJ may rely on ordinary techniques of credibility evaluation such as prior inconsistent statements, and other testimony by the claimant that appears less than candid.); *Thomas*, 278 F.3d at 958-59 (in making credibility determination, the ALJ may consider inconsistencies or discrepancies in a claimant's statements); *Bray v. CSS*, 554 F.3d  1219, 1227 (9th Cir. 2009)  ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, … among other factors."); *Smolen v. Chater*, 80 F. 3d 1273, 1284 (9th Cir. 1996) (An ALJ may consider a claimant's inconsistent statements).  Thus, the ALJ's reliance on this factor is a clear and convincing reason for rejecting Plaintiff's testimony.

Additionally, contrary to the Plaintiff's argument (Doc.18, pg. 14), the ALJ correctly noted that Plaintiff did not begin treating her Hepatitis with medication until 2007, after the insured period expired. Plaintiff had many tests evaluating her liver and her liver functioning, but no doctor prior to 2007 felt the condition was severe enough to warrant treatment. AR 722; 724; 790; 788; 792-793. Noting that a condition does not require treatment is a valid basis to reject a claimant's testimony. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (factors to evaluate credibility include medication effectiveness, side effects of medication, and functional restrictions, as well as "ordinary techniques of credibility evaluation"; treatment and lack of treatment are factors used to evaluate credibility); *Fair v. Bowen*, 885 F.2d 597, 603 (9ᵗʰ Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony).

Moreover, the record supports the ALJ's finding that although Plaintiff reported she had been taking her medication as prescribed (AR 40-41), she had not been taking it for several years after 2007. AR 523; 773; 776; 780; 782; 788. Despite the lack of treatment, however, her liver condition remained stable until at least November 2009 – almost three years after the date of insured - indicating that her condition was not as severe as she alleged at the hearing. AR 486; 729; 770; 773.

Given the above, the ALJ provided clear and convincing reasons to reject Plaintiff's testimony. Although some of the reasons the ALJ articulated were not proper, these errors are harmless because other bases for the ALJ's findings were supported by substantial evidence as outlined above. *See Carmickle*, 533 F.3d at 1162 (citing *Batson v. Comm. of Soc. Sec. Admin.*, 359 F. 3d 1190, 1197 (9th Cir. 2004) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion' such is deemed harmless and does not warrant reversal."); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001) (that some reasons for discrediting claimant's

testimony should be properly discounted does not render an ALJ's determination invalid so long as that determination is supported by substantial evidence).

Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834.  It is not the role of the Court to re-determine Plaintiff's credibility de novo.  If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).  Accordingly, the ALJ's credibility determination was proper.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Mangala Kartan.

IT IS SO ORDERED.

Dated:   **October 13, 2016**                       **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE